*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 9, 2019

Plaintiff-Appellee,

v

No. 337912
Wayne Circuit Court
LC No. 16-009975-01-FC

REGINALD KEITH HOLLEY,

Defendant-Appellant.

Before: TUKEL, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (penetration of a victim under 13 years of age). The jury acquitted defendant of a third count of that same offense. The trial court sentenced defendant to a prison term of 25 years to 25 years and a day for each conviction. We affirm.

## I. BASIC FACTS

Defendant's convictions arise from alleged sexual activity between defendant and the minor victim, KW, beginning when she was either 10 years old or nearly 10 years old. KW, who was 12 years old at the time of trial, testified that she performed fellatio on the then 21-year-old defendant at their church on at least five occasions. She was only able to recall two of those five instances with any specificity at trial. Defendant denied participating in any sexual activity with KW. The defense theory of the case was that the jury should discredit KW's testimony as patently incredible based on the layout of the church and how and when she alleged that the sexual activity occurred.

At trial, the jury had a difficult time reaching a unanimous verdict, at one point sending a note that indicated, "[W]e can't reach an agreement." Ultimately, however, the jury returned its verdict finding defendant guilty of two counts of CSC-I, but acquitting him of a third count.

At sentencing, the trial court indicated that it had not been convinced of defendant's guilt beyond a reasonable doubt. Defendant subsequently filed a motion seeking a directed verdict of

acquittal or, in the alternative, a new trial. He requested and was granted a *Ginther*[1] hearing with regard to several claims of ineffective assistance of counsel.

Ultimately, the trial court denied defendant's motions for a directed verdict or a new trial. The court again acknowledged that it had not been convinced, beyond a reasonable doubt, that KW's allegations against defendant were true, but held that on the basis of that credibility issue alone, it could not disturb the jury's verdict, which was evidently based on the jury's determination that KW had been a credible witness. With regard to the performance of defendant's trial counsel, the court held that counsel had done "a very good" job and that her decisions about which witnesses to call had been "pretty sound," possibly even "unassailable." The court further held that "newly discovered" witness testimony presented by defendant after trial would likely have prejudiced the defense, not aided it.

On appeal in this Court, defendant moved to remand for another evidentiary hearing and sought leave to file another motion for a new trial based on newly discovered evidence. Defendant alleged that since the trial court ruled on his original motions for a new trial, several additional witnesses had come forward whose testimony would establish that KW had been instructed by her mother to testify falsely. This Court granted defendant's motion for such remand proceedings.

On remand, the trial court held three evidentiary hearings at which defendant's trial counsel again testified, as did KW and five other persons who had not been called as witnesses at trial. After considering all of the evidence adduced on remand, the trial court discounted the credibility of defendant's new witnesses. The court also held that, credibility judgments aside, it was unconvinced that any of the new evidence, even if somehow admissible, would change the outcome on retrial. Thus, the trial court denied defendant's motion for a new trial on remand.

## II. ANALYSIS

On appeal, defendant raises several distinct claims of error. We examine each in turn.

## A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the trial court erred by denying his motion for a directed verdict of acquittal. Specifically, defendant argues that there is "no" record evidence that defendant *voluntarily* engaged in sexual contact with KW or that defendant "was even conscious when the alleged fellatio occurred." We disagree.

Challenges to the legal sufficiency of the evidence and to a trial court's ruling on a motion for a directed verdict of acquittal generally utilize the same standard of review, but with regard to the latter, "we only consider the evidence presented by the prosecution up to the time the motion was made." *People v Powell*, 278 Mich App 318, 320 n 1; 750 NW2d 607 (2008). "A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo." *People v*

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). All record evidence must be viewed in the "light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006).

> The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. [*People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted).]

An inference founded upon another inference can be drawn in support of the jury's verdict, and "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

Defendant was convicted of two counts of CSC-I for violating MCL 750.520b(1)(a), which prohibits a person from engaging in sexual penetration with another person who is "under 13 years of age." Defendant does not dispute that the testimony of KW, who was 12 years old at the time of trial, described two specific occasions when she performed fellatio on defendant at their church, and that, for purposes of CSC-I, "sexual penetration" is defined as including an act of fellatio. MCL 750.520(r). Defendant argues, however, that KW's testimony was so vague that, even viewing it in the light most favorable to the prosecution, a rational trier of fact could not have concluded that it had been proven, beyond a reasonable doubt, that he was conscious when he received fellatio or that he voluntarily participated in the two specific acts of fellatio about which KW testified. It is true that involuntariness is generally available as an affirmative defense for most offenses because involuntariness ordinarily cancels the "actus reus" element of the offense. See *People v Likine*, 492 Mich 367, 393-394; 823 NW2d 50 (2012). But KW testified that she told defendant that she "didn't want to," and that defendant, among other things, was standing during the acts of fellatio (while she was on her knees), pulled his pants down, sometimes held the back of her head during the act, ultimately ejaculated in her mouth, and said "bye" to her afterward. KW also testified that those things happened the same way each time she performed fellatio on defendant. Crediting such testimony as true, a rational trier of fact could reasonably infer that defendant was awake during the two specific instances of fellatio about which KW testified and that he made a volitional choice to engage in them. Thus, we reject defendant's instant claim of error as meritless.

## B. JUDICIAL IMPARTIALITY

Defendant argues that by ordering defendant to subpoena a witness, JM, during the *Ginther* proceedings—when the prosecution had failed to subpoena her—and then refusing to permit the defense to call a witness to impeach JM, the trial court demonstrated partiality toward the prosecution, thereby piercing the veil of judicial impartiality. We find no plain error entitling defendant to relief.

Because defendant did not object to the allegedly improper judicial conduct below, his argument concerning judicial partiality is unpreserved. See *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Additionally, "an objection on one ground is insufficient to preserve an appellate argument based on a different ground." *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011). Although defendant sought and was denied permission to call Gabrielle Gerod and Ebony Holley as witnesses on remand, he did not argue, as he does on appeal, that the trial court's refusal to permit those witnesses violated his constitutional right to present witnesses in his defense. Thus, this issue is unpreserved, and our review is for plain error affecting defendant's substantial rights. *Id*.

The plain-error test has four elements:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) . . . the plain error affected substantial rights . . . [, and 4) ] once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (alterations and ellipses in *Randolph*).]

"A 'clear or obvious' error under the second prong is one that is not subject to reasonable dispute." *Randolph*, 502 Mich at 10. The third element "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id*. (quotation marks and citation omitted).

Preliminarily, the trial court's allegedly improper conduct in this case did not take place at trial, and thus there was no jury to perceive any potential judicial partiality. Nevertheless, in support of his argument concerning judicial partiality, defendant relies solely on the nonbinding[2] federal decision, *United States v Karnes*, 531 F2d 214, 216-217 (CA 4, 1976), which regarded actions taken by a trial court during a jury trial that pierced the veil of judicial impartiality. Defendant cites no authority for the proposition that the same rules concerning judicial impartiality apply with equal force in post-conviction proceedings like those at issue here. On that basis alone, his instant claim of error fails under plain error review. Defendant has failed to carry his burden of demonstrating that the trial court committed any error in this regard, let alone plain error. And this Court will not seek out authority to sustain defendant's claim of error on his behalf. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).

---

[2] "[L]ower federal court decisions are not binding on this Court[.]" *People v Tucker*, 312 Mich App 645, 668; 879 NW2d 906 (2015).

In any event, we find defendant's claim of judicial partiality unconvincing on the merits. Defendant criticizes the trial court for ordering his appellate counsel to produce JM as a witness on remand, arguing that by doing so, the trial court displayed partiality toward the prosecution. But that argument relies on the presupposition that the trial court somehow knew—*before* it ordered defendant to produce JM—that her testimony would be beneficial to the prosecution and harmful to the defense. Defendant cites no record evidence that this is so. Indeed, it stands to reason that the exact opposite is true. One of the bases for defendant's original motion for a new trial was his argument that his trial counsel had performed ineffectively by failing to interview JM and call her as a witness at trial. In order to succeed on that claim of error, defendant was required to establish a factual predicate that would permit the reviewing court to conclude that there was a reasonable probability that, but for counsel's failure to interview JM and call her as a witness, the outcome of defendant's trial would have been different. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (noting that the "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel"); *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Thus, if anything, the trial court was seemingly trying to *aid* the defense in making the necessary proofs to warrant the grant of a new trial. The trial court can hardly be blamed for a lack of clairvoyance.

We reject defendant's related claim of error concerning Ebony Holley and Gabrielle Gerod for similar reasons. Defendant argues that by refusing to permit him to call Ebony and Gerod as witnesses during the post-conviction proceedings, the trial court denied him "his federal and state constitutional right to call witnesses to prove his theory of defense." In support, defendant relies on the following block quotation from *People v Steele*, 283 Mich App 472, 488-489; 769 NW2d 256 (2009):

> A criminal defendant has both state and federal constitutional rights to present a defense, which rights include the right to call witnesses. *Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967); *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008), citing US Const, Am VI and Const 1963, art 1, § 20. The extrinsic evidence in question was testimony by defendant's sister that the victims' mother and father had expressed concern that the victims' grandmother was spending her (the grandmother's) inheritance on defendant. This evidence would have tended to support one of defendant's defenses, namely, that the victims' mother put her children up to falsely accusing defendant of statutory rape so that defendant would no longer be able to receive the largess of the grandmother. While implausible, this was one of defendant's defenses, and he had a right to try to prove it. *Yost*, 278 Mich App at 379, 749 NW2d 753. Extrinsic evidence tending to prove his theory is not evidence on a collateral matter. Accordingly, this extrinsic evidence was admissible as a matter of law, and the trial court abused its discretion by excluding it.

Again, defendant cites no authority for the proposition that the rule of law announced in *Steele*, *Washington*, and *Yost*—all of which regarded a defendant's constitutional right to present evidence in his defense *at trial*—applies in the context of post-conviction proceedings like those at issue here. And again, on that basis alone, his instant claim of error necessarily fails. Defendant has failed to demonstrate that the trial court erred in this respect at all, let alone plainly. Nor will this Court advocate on his behalf, seeking out authority to sustain his claim of

error. See *Kevorkian*, 248 Mich App at 389. Moreover, given the trial court's ruling (following offers of proof) that it would have excluded Ebony's and Gerod's disputed testimony on retrial as inadmissible impeachment evidence—a ruling that defendant has failed to contest here—defendant has failed to carry his burden of establishing that his substantial rights were prejudiced.

## C. NEWLY DISCOVERED EVIDENCE

Defendant argues that the trial court abused its discretion by denying each of his two motions for a new trial based on newly discovered evidence. We disagree.

As our Supreme Court recently observed in *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018):

> This Court reviews a trial court's decision to grant or deny a motion for a new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003). An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. A mere difference in judicial opinion does not establish an abuse of discretion. [Quotation marks and additional citations omitted.]

Under MCR 2.613(C), the trial court's related factual findings are reviewed for clear error. *Johnson*, 502 Mich at 565. "[R]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it," MCR 2.613(C), and "great deference must be accorded to the trial court's assessment of the credibility of witnesses," *Cress*, 468 Mich at 691. Nevertheless, "appellate courts need not refrain from scrutinizing a trial court's factual findings, nor may appellate courts tacitly endorse obvious errors under the guise of deference." *Johnson*, 502 Mich at 565 (quotation marks and citation omitted). A factual finding is clearly erroneous if, after plenary review of the record, "the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. (quotation marks and citation omitted).

As noted in *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012), when deciding whether to grant a motion for a new trial based on a claim of newly discovered evidence, our courts apply the test described in *Cress*, under which

> a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*Cress*, 468 Mich at 692 (quotation marks and citations omitted).]

"The defendant carries the burden of satisfying all four parts of this test." *Rao*, 491 Mich at 279. Moreover, "motions for a new trial on the ground of newly-discovered evidence are looked upon with disfavor, and the cases where [our Supreme Court] has held that there was an abuse of discretion in denying a motion based on such grounds are few and far between." *Id*. at 279-280 (quotation marks and citation omitted). "[T]he policy of the law is to require of parties care,

diligence, and vigilance in securing and presenting evidence." *Id*. at 280 (quotation marks and citation omitted).

> That is, in fairness to both parties and the overall justice system, the law requires that parties secure evidence and prepare for trial with the full understanding that, absent unusual circumstances, the trial will be the one and only opportunity to present their case. It is the obligation of the parties to undertake all reasonable efforts to marshal all the relevant evidence for that trial. Evidence will not ordinarily be allowed in installments. [*Id*.]

In this case, with regard to both defendant's original motion for a new trial and the one he filed on remand, the trial court focused its analysis primarily on the fourth element of the *Cress* test, i.e., whether the purportedly new evidence would make a different result probable on retrial. Based on the trial court's factual findings—particularly its credibility judgments—and its conclusion that much of the disputed evidence would not be admissible on retrial, the court determined that the proffered new evidence would not make a different result probable on retrial. In particular, the trial court discounted Daisy Shuford's testimony that KW had asked Daisy and JM to perjure themselves, instead accepting JM's testimony that no such discussion ever took place. The trial court also discounted the testimony of KW's estranged father, his girlfriend Lacey Plessenger, and his cousin Kawan Taylor, specifically finding that KW's father was a "manifestly unreliable" witness and that Taylor was "pathetically unreliable" and prone to tell "drug induced lies[.]" Indeed, the trial court noted that, in light of the evidence presented by defendant in the post-conviction evidentiary hearings, the court—which had originally disagreed with the jury's guilty verdict in this case—had become *more* persuaded of defendant's guilt, not less.

On this record, we find no basis for disturbing the trial court's credibility judgments concerning those witnesses. Rather, we are satisfied that the trial court's credibility determinations were apt. When she testified below, Daisy Shuford was unable to recall what year it then was, and yet she claimed to have a remarkably clear recollection of a conversation—which she thought might have taken place sometime in the autumn of 2013, 2014, or 2015, after a youth-group trip to a place she could not recall—during which KW had asked Daisy and JM to testify against defendant. Daisy also had a clear motive to lie, admitting that she considered defendant to be "like family." On the other hand, without displaying any similar memory lapses, JM flatly denied that the conversation described by Daisy ever took place, stating that she knew "for a fact" that KW "never" asked JM to testify against defendant. Thus, we are neither definitely nor firmly convinced that the trial court made a mistake by crediting JM's testimony while rejecting Daisy's.

Nor are we convinced that the court made a mistake by discounting the testimony of KW's father, Plessinger, and Taylor. Like Daisy, the father and Plessinger had a clear motive to lie: Winston's longstanding, vitriolic dispute with KW's mother concerning child support. On the other hand, Taylor is an incarcerated felon, who routinely uses highly intoxicating opiate painkillers like hydromorphone and oxycodone, whose testimony was extremely inconsistent on material points within the limited scope of this proceeding, and who admitted to previously recanting his sworn affidavit testimony about this case and asserting that KW's father had pressured Taylor into making false statements.

Finally, even partially rejecting the trial court's credibility judgments, it seems that there is no basis to conclude that the trial court abused its discretion by denying defendant a new trial on the basis of the newly discovered evidence. Notably, KW's father and Taylor both acknowledged that their understanding of KW's out-of-court statements to them was that she had lied at trial about whether the sexual activity at issue was *consensual*, not about the fact that it *happened*. But consent is not a valid defense here. See *People v Duenaz*, 306 Mich App 85, 92; 854 NW2d 531 (2014) ("consent is not a relevant defense to a CSC charge involving an underage minor"). Therefore, the testimony offered by KW's father and Taylor would not make a different result probable on retrial. On the contrary, as the trial court noted, such testimony was seemingly prejudicial to the defense, not helpful.

## D. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his trial counsel performed ineffectively in several respects, contending that counsel's deficient performance entitles him to a new trial. We disagree.

In this case, a *Ginther* hearing occurred, and thus our review includes the evidence presented at the *Ginther* hearing. See, e.g., *People v Trakhtenberg*, 493 Mich 38, 45-46; 826 NW2d 136 (2012). "Whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *Id*. at 47.

The "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel. . . ." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The "reasonable probability" standard can be satisfied by less than a preponderance of the evidence. *Trakhtenberg*, 493 Mich at 56.

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Strickland*, 466 US at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Thus, there is a "strong presumption

that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy[.]" *Id.* at 242-243. "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). Accordingly, the reviewing court must consider the range of potential reasons that counsel might have had for acting as he or she did. *Id.*

Defendant raises several distinct claims of ineffective assistance of counsel. Each will be analyzed in turn.

### 1. FAILURE TO INTERVIEW OR CALL KW-2

Defendant argues that his trial counsel performed ineffectively by failing to interview another young parishioner, KW-2,[3] as a witness to impeach KW and failing to call her for that purpose at trial.

As noted in *Strickland*, 466 US at 690-691:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

At the *Ginther* hearing, defendant's trial counsel acknowledged that she learned of KW-2 and JM before trial by watching KW's forensic interview at Kids Talk—a video recording that counsel had received *from* the prosecution. Counsel indicated that she chose not to interview KW-2 or JM because she believed that, if one of them revealed inculpatory information, counsel would be obliged to divulge that information to the prosecution.

This was an objectively unreasonable basis for counsel to not interview potential witnesses. A reasonably competent attorney would have realized that the rules governing discovery in criminal matters generally do not compel defense attorneys to disclose inculpatory evidence to the prosecution. See MRPC 1.6; MCR 6.201; *People v Phillips*, 468 Mich 583, 588; 663 NW2d 463 (2003). Moreover, because counsel had received a copy of the Kids Talk video *from* the prosecution, a reasonably prudent attorney would have surmised that the prosecution was also aware of KW's statement that she had told KW-2 and JM about the sexual activity at issue in this case. Hence, under the circumstances, it was unreasonable for counsel to decide not to interview those potential witnesses for fear of tipping off the prosecution about their existence or the substance of their testimony.

---

[3] We refer to this minor as KW-2 to differentiate her from the complainant, KW.

Nevertheless, we conclude that defendant cannot satisfy the prejudice prong of the *Strickland* test. It is true that the jury in this case struggled to reach a unanimous verdict and that when, as here, "there is relatively little evidence to support a guilty verdict to begin with (e.g., the uncorroborated testimony of a single witness), the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt." *Trakhtenberg*, 493 Mich at 56. Even so, on this record, we cannot conclude that the trial court erred when it held that there was no reasonable probability that the testimony of KW-2 or JM would have changed the jury's verdict, at least in *defendant's* favor.

KW-2 indicated that in October 2015, KW had approached her at the church, in private, and had informed her that defendant had "molested" KW inside the church after a church field trip for the youth group. As the trial court aptly noted, such testimony might have permitted the jury to find defendant guilty of the third count of CSC-I for which he was ultimately acquitted. Moreover, any benefit to the defense from KW-2's additional testimony on this subject—her claim that defendant could not have molested KW inside the church after the field trip because nobody went inside the church building after the field trip or could have done so—dissipated entirely on cross-examination when KW-2 admitted that she had no personal knowledge whether the church's doors had been locked, having left the church while the majority of the field-trip attendees were still present in the parking lot. And with regard to JM, in each of his two briefs on appeal, defendant candidly admits that JM's testimony was detrimental to the defense. Thus, defendant has failed to carry his burden of demonstrating a reasonable probability that the outcome of his trial would have been different but for counsel's failure to interview KW-2 and JM or call them as witnesses at trial.

## 2. FAILURE TO CALL AMBER ROBINSON

Defendant contends that his trial counsel performed ineffectively by failing to call his girlfriend, Amber Robinson, to testify regarding KW's jealousy of Robinson as a potential motive for KW to fabricate allegations of sexual abuse against defendant. We conclude that defendant has failed to rebut the strong presumption that counsel's chosen trial strategy was sound. Defendant is correct that Robinson's *Ginther* testimony tended to suggest that KW had been infatuated with defendant and very jealous of and confrontational toward Robinson. But as the trial court recognized, given the marked age disparity between KW and the much older defendant, her actions and the *intensity* of her jealousy appear peculiar. As defendant's trial counsel noted, Robinson's testimony could have suggested to the jurors that KW was not acting like a girl her age with a "crush" on defendant, but was, instead, acting like a woman spurned, one whose sexual partner had left her for another woman. Indeed, defense counsel explained that, after considering those potential ramifications, she decided to minimize the evidence concerning KW's crush, not highlight it. Under the circumstances, a reasonably competent attorney might have chosen that same strategy, and counsel's chosen strategy is not objectively unreasonable merely because it failed to work. See *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008) ("A failed strategy does not constitute deficient performance.").

## 3. FAILURE TO SUFFICIENTLY CROSS-EXAMINE KW

Defendant argues that his trial counsel performed ineffectively by failing to cross-examine KW regarding inconsistencies between her trial testimony and her testimony at the preliminary examination. Specifically, defendant argues:

> At the preliminary exam, [KW] said the most recent incident occurred in the landing between the first and second floors of the church. But at trial, she said it occurred in the overflow room in back of the robe room.

Again, defendant has failed to rebut the strong presumption that counsel's chosen strategy was reasonable. Had counsel cross-examined KW on this point at trial, it might have prompted her to testify that she *did* recall a third distinct instance of fellatio, thereby assisting the prosecution in proving a third count of CSC-I against defendant. In light of that risk, a reasonably competent defense attorney might have decided that it was too risky to cross-examine KW on this point.

## 4. FAILURE TO ARGUE REGARDING THE LACK OF CORROBORATING WITNESSES

Defendant argues that his trial counsel performed ineffectively by failing to argue that the prosecution had failed to call witness RD (i.e., defendant's cousin), who would have been able to corroborate KW's testimony, if it was truthful, concerning one of the specific instances of fellatio. We again conclude that defendant has failed to rebut the presumption that counsel employed effective strategy.

During closing arguments, defendant's trial counsel did, in fact, reference RD obliquely, arguing as follows:

> She [i.e., KW] even went so far as to make it a threesome. So not only does she put herself in a sexual encounter with him, she adds another woman, female.

> Now, we've got somebody kissing him and I'm on my knees. This is too much. This is not real. This is not real.

> \* \* \*

> And then don't forget the really creative piece of the threesome. Why was that? That was for impact. That was for confirmation. I'm telling the truth, and I—it was another person. She was kissing him while I was doing. [Sic.]

At the *Ginther* hearing, counsel explained that she had interviewed RD before trial, further noting that both the defense and the prosecution had declined to call RD as a trial witness. Counsel explained that she had believed that RD would almost certainly perjure herself, and counsel also believed that it would have been impossible to predict how RD would testify or whether her testimony would aid or harm the defense.

In light of the theory of the case selected by defendant's trial counsel—i.e., that KW's testimony was false and fantastical—it is tempting to second-guess counsel's decision *not* to point out that, although KW had specifically identified RD as someone who could corroborate material portions of KW's testimony, the prosecution had failed to call RD as a witness at trial.

-11-

In the end, however, it seems that there is at least one reasonable rationale that could have supported counsel's decision in this regard. Counsel might have feared that in rebuttal, the prosecution would have responded by arguing that, given the social stigma attached to sexual relationships with one's cousin—particularly in a church setting—RD would naturally have been reluctant to admit that KW's testimony was accurate. Counsel might also have reasonably feared that the prosecution's responsive argument would draw the jury's attention to the fact that, like KW, RD is an underage girl, suggesting to the jury that defendant is a sexual predator who preys on young girls, including those who are related to him. In light of such concerns, a reasonably competent attorney might have decided that the potential benefits of the proposed argument about RD were outweighed by the potential drawbacks. Consequently, we are unable to conclude that defendant has rebutted the strong presumption that his trial counsel employed effective strategy in this respect.

### 5. DECISION TO CALL LAMARK HOLLEY

Defendant argues that his trial counsel performed ineffectively by calling defendant's uncle, Lamark Holley, as a witness. Specifically, defendant contends that his trial counsel performed ineffectively by eliciting testimony from Lamark that bolstered KW's credibility. We are unpersuaded. Defendant's argument uses the leverage of hindsight to criticize counsel's decisions regarding Lamark. But defendant has cited no record evidence indicating that, at the time that counsel called Lamark as a witness and asked him the disputed questions, counsel should have known that Lamark's responses would be prejudicial to the defense. Thus, defendant has failed to establish the factual predicate for this claim of ineffective assistance of counsel.

### 6. FAILURE TO CALL MICA HOLLEY AND EBONY HOLLEY

Defendant contends that his trial counsel performed ineffectively by failing to call defendant's aunt Mica Holley and his sister Ebony Holley to offer testimony that KW's mother strongly disliked the Holley family and thus had a motive to coerce KW into fabricating untrue allegations against defendant. Specifically, defendant argues that his trial counsel should have sought, under MRE 404(b), to introduce testimony from Mica and Ebony suggesting that KW's mother had, in the past, spread false rumors in the church concerning the defendant's family. In other words, defendant contends that, under the guise of MRE 404(b), counsel should have tried to elicit testimony from Ebony and Mica that unspecified individuals, who never testified, had made out-of-court statements to Ebony and Holley, reiterating untrue, derogatory, out-of-court statements allegedly made by KW's mother to other unspecified church members about Ebony and Mica.

Among other things, defendant ignores the principle that a "statement . . . is just that—a statement, not a prior act," and consequently MRE 404(b) does not govern the admission of oral statements. *People v Goddard*, 429 Mich 505, 518; 418 NW2d 881 (1988). Instead, the rules regarding *hearsay* are what generally govern the admissibility of out-of-court assertions, see, e.g., *id.* at 518 n 14, and defendant has presented no theory of admissibility for the statements in question. Nor are we able to conceive of any viable theory of admissibility, especially within the confines of the web of hearsay-within-hearsay spun by the testimony of Ebony and Mica. See generally *People v Mesik (On Reconsideration)*, 285 Mich App 535, 538; 775 NW2d 857 (2009)

("Hearsay is inadmissible unless a recognized exception applies. MRE 802. Where multiple levels of hearsay are involved, all declarations made must not be hearsay or must fall within a recognized exception. MRE 805."); see also *United States v Boyce*, 742 F3d 792, 800 (CA 7, 2014) (POSNER, J., concurring) ("One reason that hearsay normally is inadmissible . . . is that it often is no better than rumor or gossip."). Therefore, defendant has failed to carry his heavy burden of demonstrating that counsel performed ineffectively by failing to elicit such testimony. Any attempt to admit it would have been futile, and counsel does not perform ineffectively by failing to advance a futile position. See *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014).

## E. GREAT WEIGHT OF THE EVIDENCE

Finally, defendant argues that the trial court abused its discretion by denying his motion for a new trial based on his argument that the jury's verdict was against the great weight of the evidence. We disagree.

"We review a trial court's determination that a verdict was not against the great weight of the evidence for an abuse of discretion," which "occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Kosik*, 303 Mich App 146, 154; 841 NW2d 906 (2013). "[A] new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). "[A] judge may not repudiate a jury verdict on the ground that he disbelieves the testimony of witnesses for the prevailing party." *Id*. at 636 (quotation marks and citations omitted). In other words, it is the fact-finder's prerogative to assess witness credibility, and a jury's assessments in that regard may only be displaced by a reviewing court under exceptional circumstances:

> for example, if the testimony contradicts indisputable physical facts or laws, where testimony is patently incredible or defies physical realities, where a witness's testimony is material and is so inherently implausible that it could not be believed by a reasonable juror, or where the witnesses testimony has been seriously impeached and the case marked by uncertainties and discrepancies. [*Id*. at 643-644 (quotation marks, citations, and brackets omitted).]

In this instance, defendant argues that KW's material testimony was "so inherently implausible" that it could not be believed by a reasonable juror. It is true that KW was able to recall very little detail about the instances of sexual contact between herself and defendant. Poor memory in a young witness does not, however, equal untruthfulness. KW testified that she performed fellatio on defendant at the church on more than five occasions. When asked to provide details concerning a specific instance of something that one has done repeatedly in the past, always at the same location, it may be difficult to recall any one instance in detail or to differentiate the memory of that particular instance from memories of others. This is particularly true in the case of a young witness testifying under stress concerning an embarrassing, sexual topic.

Moreover, consent is not a valid defense here. See *Duenaz*, 306 Mich App at 92. A rational juror might have decided that KW was, in fact, untruthful in some ways—insofar as she

testified that she was an unwilling participant—while nevertheless concluding that the *material* portions of her testimony had been true. In other words, a rational juror might have discredited KW's testimony in certain respects while nevertheless crediting her testimony that she performed fellatio on defendant on at least two occasions when she was under 13 years of age. We conclude that nothing about her testimony in that regard was inherently implausible. Hence, the trial court did not abuse its discretion by denying defendant's great-weight motion. On the contrary, the trial court's decision fell well within the range of reasonable and principled decisions.

Affirmed.

/s/ Jonathan Tukel
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly